UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSE ESQUILIN,<br>      Plaintiff,<br><br>      v.<br><br>RN TIFFANY, et al.,<br>      Defendants. | No. 3:21-cv-978 (SRU) |

**INITIAL REVIEW ORDER**

On July 16, 2021, Jose Esquilin, a sentenced state prisoner currently confined at Robinson Correctional Institution, filed this *pro se* action pursuant to 42 U.S.C. § 1983 against Osborn Correctional Institution ("Osborn") employees, RN Tiffany, RN Jimims, APRN Hannah, and RN Rose; and against Hartford Correctional Institution ("HCC") employees, RN Jane Doe and A/P Officer John Doe. *See* Compl., Doc. No. 1. Specifically, Esquilin alleges that he has received inadequate medical care for an ankle injury during his confinement within the Connecticut Department of Corrections ("DOC") and seeks monetary damages and medical treatment. *Id.* at 5–6.

I will now consider the plausibility of Esquilin's complaint in accordance with the screening duty imposed under 28 U.S.C. § 1915A.

I.      **STANDARD OF REVIEW**

Pursuant to 28 U.S.C. § 1915A, I must review prisoner civil complaints and dismiss any portion of those complaints that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. Although detailed allegations are not required, the complaint must include sufficient facts

1

to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). Conclusory allegations are not sufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

## II.     FACTUAL BACKGROUND

On April 6, 2021, Esquilin was traveling in a Central Transportation Unit ("CTU") van after a court visit. *See* Compl., Doc. No. 1, at ¶ 1. At around 8:15 p.m., the CTU van stopped at Hartford Correctional Center ("HCC") to drop off two passengers. *Id.* At that time, Esquilin requested to use the bathroom and was escorted out of the CTU van. *Id.* at ¶ 2. On his way into HCC, Esquilin fell due to a large crack in the floor. *Id.* As he hit the ground, Esquilin heard a loud snapping sound. *Id.* He twisted his left ankle, and it started to swell. *Id.* at ¶ 3. Esquilin was then escorted into HCC to the Admitting and Processing ("A/P") area. *Id.*

The CTU officer asked RN Jane Doe, a nurse at the HCC A/P nursing station, if she could examine Esquilin because he had just fallen outside and twisted his ankle. *Id.* at ¶ 4. RN Jane Doe refused to examine Esquilin. She stated that he could have the medical staff check his injury when he returned to his facility, which at the time was Osborn. *Id.* at ¶ 5.

Esquilin returned to the CTU van and arrived at Osborn around 9:30 p.m. *Id.* at ¶ 6. He then informed a correctional officer, A/P Officer John Doe, that he needed immediate medical attention for his ankle. *Id.* A/P Officer John Doe did not contact any medical staff, and Esquilin was forced to walk to his housing unit on his swollen ankle. *Id.* at ¶ 7.

The next day, Esquilin showed a different correctional officer his ankle. *Id.* at ¶ 8. That officer notified her supervisor about Esquilin's condition and was instructed to send Esquilin directly to the medical unit. *Id.* At the medical unit, Esquilin received an ice bandage, an ice pack and had an x-ray performed. *Id.* at ¶ 9. To date, Esquilin maintains that he has not received adequate medical treatment for his injury and still experiences pain. *Id.* at ¶ 9.

### III.    DISCUSSION

Section 1983

Section 1983 provides a private cause of action for individuals to sue for any assault on their constitutional rights that occurs "under color of" state law.[1] Because section 1983 imposes liability only upon those who actually cause a deprivation of rights, a plaintiff must allege some personal responsibility on the part of the official. *See Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) ("To hold a state official liable under [section] 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official….").

Esquilin names six defendants[2] in his complaint, yet only pleads facts about two: Defendants RN Jane Doe and A/P Officer John Doe. Because Esquilin does not establish the

---

[1] Although Esquilin has not alleged the defendants acted under color of state law, I presume they did as state prison employees. But Esquilin would need to specifically allege those facts to bring a case under section 1983.

[2] In his complaint, Esquilin names the following as defendants: (1) RN Tiffany; (2) RN Jimims; (3) APRN Hannah; (4) RN Rose; (5) RN Jane Doe; and (6) A/P Officer John Doe.

remaining defendants' direct personal involvement in his pleadings, I must dismiss them from the case.

Applicable Standard

Section 1983 itself contains no state-of-mind requirement because the statute itself is not a source of substantive rights. *See Graham v. Connor*, 490 U.S. 386, 393–94 (1989). Rather, it provides a method for vindicating federal rights elsewhere conferred. *Id.* Therefore, the relevant state of mind requirement will be what is necessary to state a violation of the underlying federal right.

Esquilin is a sentenced state prisoner complaining of conditions of confinement.[3] Such claims are analyzed under the cruel and unusual punishment clause of the Eighth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).

Eighth Amendment Deliberate Indifference to Medical Needs

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (cleaned up). Such indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104–05.

To state a claim for deliberate indifference, a prisoner must satisfy both an objective and a subjective prong. Objectively, the alleged deprivation must be "sufficiently serious." *Wilson*

---

[3] The Court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). The publicly available DOC website shows that Esquilin was sentenced on May 3, 2019 to four years and six months of incarceration. *See Inmate Info.*, Conn. St. Dep't of Corr., http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=427678.

4

*v. Seiter*, 501 U.S. 294, 298 (1991).  The condition must be "one that may produce death, degeneration, or extreme pain."  *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (cleaned up).  Subjectively, the defendant must have been reckless—that is, he or she must have been actually aware of a substantial risk that the plaintiff would suffer serious harm as a result of their conduct.  *See Salahuddin v. Goord*, 467 F.3d 263, 280–81 (2d Cir. 2006).  Although "mere medical malpractice is not tantamount to deliberate indifference," such medical malpractice may constitute deliberate indifference when it "involves culpable recklessness, i.e., . . . a conscious disregard of a substantial risk of serious harm."  *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) (citing *Hathaway*, 99 F.3d at 553) (cleaned up).

    i.    *Objective Prong*

In assessing the seriousness of a medical condition, courts can consider "whether 'a reasonable doctor or patient would find [it] important and worthy of comment,' whether the condition 'significantly affects an individual's daily activities,' and whether it causes 'chronic and substantial pain.'"  *Young v. Choinski*, 15 F. Supp. 3d 172, 182 (D. Conn. 2014) (quoting *Salahuddin*, 467 F.3d at 280).

Esquilin sustained an ankle injury.  That, without more, does not rise to the level of a serious medical need.  Other federal courts, including the Second Circuit, have reached a similar conclusion.  *See, e.g., Chatin v. Artuz*, 28 F. App'x. 9, 10–11 (2d Cir. 2001) ("[Plaintiff]'s condition, which medical staff at various stages of his treatment diagnosed as a sprained ankle, a bone spur, and a neuroma, did not rise to the level of seriousness that the Eighth Amendment requires."); *Johnson v. Kachelmeyer*, 2006 WL 625837, at *9 (W.D.N.Y. Mar. 9, 2006) (ankle sprain with several contusions are not sufficiently serious); *Doumin v. Carey*, 2008 WL 4241075,

\*6 (N.D.N.Y. Sept. 12, 2008) (sprained ankle with soft tissue swelling, but no fracture or dislocation, is not sufficiently serious); *Bacon v. Harder*, 248 F. Appx. 759, 761 (7th Cir. 2007) (ankle sprain with no fracture did not constitute a serious medical need).  Importantly, Esquilin has not stated with any specificity the degree of the pain he is experiencing.  Unless Esquilin can allege other facts about the severity of his injury, for example, the results of the x-rays taken, his ankle injury alone, does not meet the sufficiently serious standard.

The analysis does not end there, however.  An injury that is not sufficiently serious on its own can become sufficiently serious if that injury significantly worsens due to the denial of medical treatment.  *See Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) ("A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'") (cleaned up).

Esquilin sustained his ankle injury at night.  The next day, he received an x-ray, an ice pack, and an ice bandage.  Nevertheless, Esquilin claims that the treatment he received was inadequate because he is still experiencing pain.  But there is a difference between experiencing pain that is a natural part of the healing process and experiencing exacerbated pain that is the result of being denied medical treatment.  The Eighth Amendment only reaches the latter.

Esquilin has not attributed his ongoing pain to having been denied services.  Therefore, Esquilin's ongoing pain from his ankle injury also does not meet the sufficiently serious standard.

    ii.    *Subjective Prong*

        a.    RN Jane Doe

Esquilin has alleged that RN Jane Doe failed to provide him medical attention after the CTU officer explained that Esquilin had twisted his ankle. *See* Compl., Doc. No. 1, at ¶ 4. He has not, however, alleged any facts showing that RN Jane Doe acted with a culpable state of mind. No facts show that she was aware that Esquilin would suffer a substantial risk of harm if he was not provided with treatment at HCC. Nor has Esquilin alleged facts showing that RN Jane Doe was aware that he would not be provided with adequate medical treatment when he returned to Osborn. On the contrary, RN Jane Doe stated that Esquilin *should* be checked upon his return to Osborn. *Id.* at ¶ 5. At most, Esquilin has alleged that RN Jane Doe displayed negligence, which is not actionable under section 1983. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) ("Deliberate indifference describes a mental state more blameworthy than negligence . . . .") (cleaned up).

      b.  A/P Officer John Doe

On the other hand, Esquilin has alleged facts that could support an inference that A/P Officer John Doe acted with deliberate indifference to Esquilin's medical needs. Non-medical prison personnel engage in deliberate indifference when they intentionally delay access to medical care for prisoners who are in "extreme pain and ha[ve] made [their] medical problems known to the attendant prison personnel." *Hodge v. Coughlin*, No. 92 Civ. 0622, 1994 WL 519902, at * 11 (S.D.N.Y. Sept. 22, 1994), *aff'd*, 52 F.3d 310 (2d Cir. 1995).

Here, Esquilin alleges that A/P Officer John Doe failed to contact any medical staff despite being told that Esquilin required immediate medical attention. Because Officer John Doe failed to act, Esquilin had to walk on his swollen ankle back to his housing unit at Osborn. And although Esquilin received medical care the following day, that fact would not affect the analysis

if it can be shown that the delay was for the purpose of making Esquilin suffer. *See Archer v. Dutcher*, 733 F.2d 14, 16 (2d Cir. 1984) (finding deliberate indifference in the "intentional efforts on the part of defendants to delay [plaintiff's] access to medical care at a time when she was in extreme pain" constitute medical indifference). Admittedly, it is not clear to me that Officer John Doe intentionally, as opposed to negligently, ignored Esquilin's medical needs. One could infer that he did, but that inference requires a leap based on the facts Esquilin has alleged. Nonetheless, Esquilin has pleaded *just enough* facts to satisfy the second prong with respect to Officer John Doe.

Injunctive Relief: Official Capacity Claims

Esquilin has not specified whether he sues the defendants in their individual or official capacities. However, he has requested medical treatment as a form of relief for violation of his constitutional rights. *See* Compl., Doc. No. 1, at 6. Thus, I construe his complaint as seeking injunctive relief against the defendants in their official capacities.

The DOC website lists Robinson Correctional Institution as Esquilin's current location.[4] Thus, any official capacity claims against RN Jane Doe and A/P Officer John Doe, who were allegedly DOC employees working at HCC and Osborn, are moot. *See Gray v. Licon-Vitale*, 2021 WL 124320, at *1 (D. Conn. Jan. 13, 2021) ("In the Second Circuit, an inmate's transfer from a correctional facility generally moots claims for declaratory

---

[4] *See Inmate Info.*, Conn. St. Dep't of Corr., http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=427678 (last visited Nov. 15, 2021). The public docket lists Worcester County Jail and House of Corrections as Esquilin's mailing address. Esquilin must file a notice of change of address. Under the Local Rules of this Court, it is Esquilin's responsibility to "provide an address where service can be made upon" him. D. Conn. L. Civ. R. 83.1(c)(2).

and injunctive relief against officials at that facility."). Therefore, I conclude that Esquilin cannot proceed with any official capacity claims for injunctive relief in this matter.

To the extent that Esquilin seeks monetary damages from the defendants in their official capacities for violations of his federal constitutional rights, those claims are barred by the Eleventh Amendment and are dismissed. *See Kentucky v. Graham*, 473 U.S. 159, 169–70 (1985).

## ORDERS

(1) For the foregoing reasons, Esquilin's complaint is dismissed without prejudice. I will permit Esquilin an opportunity to file an amended complaint to cure the deficiencies identified in this ruling within **thirty (30) days** from the date of this order. Esquilin is advised that any amended complaint will completely replace the prior complaint in the action, and that no portion of any prior complaint may be incorporated into his amended complaint by reference. If Esquilin fails to file an amended complaint within this period of time, the Court will close this case with prejudice.

(2) Esquilin is advised that he must name in the case caption all defendants against whom he asserts claims.

(3) Esquilin is advised to file a notice of change of address. Failure to do so may result in the dismissal of Esquilin's case.

It is so ordered.

Dated at Bridgeport, Connecticut this 15th day of November 2021.

/s/ Stefan R. Underhill  
Stefan R. Underhill  
United States District Judge